# Exhibit 45



# CF9.1 General information on double taxation agreements and international agreements

| | |
|---|---|
| **Version** | 2022-1 |
| **ISBN number** | 978-87-417-0760-0 |
| **Place of printing** | The guide is not printed - only available on skat.dk |
| **Document type** | Legal guidance |

# Contents

The section deals with some formal and general matters concerning the Danish double taxation agreements and international agreements.

The section contains:

- The guide's review of agreements and other international agreements
- Faroe Islands and Greenland
- Agreement or contract
- Protocols
- A double taxation agreement is created
- Language
- The relationship between double taxation agreements and Danish law.

## The guide's review of agreements and other international agreements

The content of the double taxation agreements and other international agreements that Denmark has entered into is reviewed in general in section **CF9.2** . The review focuses in particular on the areas where the individual double taxation agreements / agreements deviate from the OECD's model agreement / model agreements.

### Note

This section contains only a review of the double taxation agreements and agreements. The section does not contain a review of the tax rules in the countries concerned. The Ministry of Taxation can not comment in advance with the necessary certainty on the tax rules in all the countries with which Denmark has entered into agreements. Under the history form, however, a link to the foreign tax authority's website has been inserted as far as possible.

## Faroe Islands and Greenland

These parts of the kingdom are considered for foreign purposes in relation to Denmark for tax purposes. The tax area is part of the self-government schemes for the Faroe Islands and Greenland, and Danish tax legislation does not apply in these parts of the kingdom. This is reflected in the fact that double taxation agreements / agreements have been entered into between the Faroe Islands and / or Greenland and Denmark.

The Faroe Islands and Greenland are not covered by the double taxation agreements that Denmark has entered into, unless specifically agreed between the Faroe Islands and / or Greenland and the country with which Denmark has entered into a double taxation agreement. The Faroe Islands and Greenland have the opportunity to enter into double taxation agreements with other countries. The guide does not include mention of the Faroe Islands' and Greenland's agreements and arrangements.

## Agreement or contract

In practice, different terms are used for double taxation agreements. Some countries want to use the term "Convention", while others want to use the term "Agreement".

Denmark has no preferences for one or the other term, as it does not make any difference in Danish law. Denmark therefore accepts the wishes of the other party in this area. From a Danish point of view, the terms double taxation agreement and double taxation agreement are used synonymously.

From a Danish point of view, it also makes no difference whether the agreement / contract has been entered into between the "Kingdom of Denmark and X-country", or whether it has been entered into between the "Government of the Kingdom of Denmark and the Government of X-country".

## Protocols

Some double taxation treaties have a protocol. A protocol is an appendix that forms part of the overall agreement. A protocol is as binding on the two countries as the double taxation treaty itself.

Protocols can be created in two ways.

Firstly, during the negotiations on the conclusion of a double taxation agreement, the parties may find it necessary,

- that the understanding of certain provisions of the Convention be made clear; or
- to have it determined that a provision must be administered in a particular manner.

This will typically be recorded in a protocol. The protocol then refers to the relevant provisions and indicates how the provisions are to be understood or administered. Actual substantive rules are sometimes also seen to be inserted in such protocols.

The second way to apply protocols is by amending existing double taxation treaties. Once a double taxation agreement has been concluded, it will in most cases apply for many years to come, but there may be cases where the two countries find it necessary to amend individual provisions without the need to renegotiate the entire double taxation agreement.

This can be done with a protocol - sometimes called a change protocol. An amendment protocol has the same function as an amendment law in internal Danish law. In an amendment protocol, just like in an amendment law, you specifically go in and replace a hitherto existing provision in the agreement with a new one.

## A double taxation agreement is created

A double taxation agreement is the result of a negotiation between two parties whose interests by their nature do not necessarily coincide.

There are no formal rules for negotiating a double taxation agreement. Some countries place emphasis on building as large a network of double taxation agreements as possible, while other countries seek to focus efforts more on the countries and regions with which they have the greatest economic and business relations. On the other hand, the rest of the process is in a fairly fixed framework.

Negotiations to conclude a double taxation agreement take place by the two parties meeting at official level. Prior to the negotiations, the two parties have most often exchanged a draft agreement, just as they have each familiarized themselves with the other party's tax legislation and examined the double taxation agreements that the other party has entered into with other countries.

Once an agreement has been reached at official level on the content of a double taxation agreement, the leaders of the two negotiating delegations will usually each put their initials at the bottom of each page of the agreed text of the agreement.

Putting initials on does not in itself have any legal effect. It is only an expression of the fact that the two negotiators commit themselves to each other to seek political support in their respective countries for the conclusion of a double taxation agreement with the content that has been agreed upon.

In Denmark, the procedure is then that the double taxation agreement is submitted to the Minister of Taxation for political approval. Once the Minister of Taxation has approved the new agreement, and the corresponding one has been politically approved in the other country, you are ready to sign the agreement. The terms "sign" and "sign" are used synonymously.

The signing takes place at the political level, ie. by a minister. It does not necessarily have to be the Minister of Taxation. The signature may also be made by an official authorized to do so by a Minister. It will typically be the Ministry of Taxation's head of department or Denmark's ambassador to the other country, but it can in principle be anyone.

The signature itself has no legal effect either. At the time of signing, the two governments undertake to seek the necessary approval procedures in order for the agreement to be acceded to and thus enter into force.

In Denmark, the approval procedure means that the Folketing must pass a law authorizing the government to accede to the double taxation agreement in question. This must be done in each individual case.

The approval procedures vary from country to country and depend on the legislation of each country. It is of no importance to Denmark how the procedure is in the other country. The crucial thing is that the approval procedures provided for in the legislation of the other country are actually implemented.

Once the Folketing has passed a law authorizing the government to accede to a double taxation agreement, it will be notified to the other country. This is done by a formal accession note, which is sent to the other country through diplomatic channels, ie. via the Ministry of Foreign Affairs.

Similarly, Denmark receives an accession note from the other country when it has completed its approval procedures there.

New double taxation treaties usually enter into force on the date on which the latter of the two countries submits its accession note. Sometimes, however, it is agreed that it must take 30 days before the agreement enters into force.

The agreement can enter into force at any time of the year. The most important thing is not the formal date of entry into force, but the date on which the new agreement applies. This is stated in the agreement's entry into force provisions, and it is almost always the income year that begins from the next turn of the year.

Finally, the new double taxation agreement must be announced. This is done in Official Gazette C, where international agreements and treaties are announced.

Protocols to amend existing double taxation agreements follow the same procedures as when "whole" agreements are concluded.

In the process up to and including the signing, tax information exchange agreements follow exactly the same procedure as double taxation agreements. But the approval procedure is simpler. As the tax information exchange agreement does not change the distribution of the right to tax an income, it is not necessary to submit it to the Folketing. A Danish language version or translation of the agreement is therefore sent to the Folketing's Tax Committee for information, after which a Danish accession note can be sent, and the agreement is then published in the same way as double taxation agreements.

## Language

Double taxation agreements can be concluded in one or more languages. In practice, the negotiations always take place in English, except for negotiations between the Nordic countries. The agreements are therefore almost always concluded with English as the official language version or as one of several official language versions.

Some countries also want to enter into the agreements in their own language, and in such cases the Danish side also wants the agreement to be entered into in Danish. When the agreement is officially concluded in three languages, it is almost always agreed that the English language version should be decisive in case of doubt.

In cases where a double taxation agreement has only been entered into in English, it will be clearly marked in the Danish language version by the executive order in Lovtidende C that this is a translation. This means that only the English language version is the official one.

In practice, it does not matter whether the Danish version in the executive order is an official version or whether it is a translation.

# The relationship between double taxation agreements and Danish law

Double taxation agreements are binding on the participating states under international law and take precedence over national rules.

The Danish double taxation agreements are part of Danish law and can therefore be immediately invoked by citizens before the tax authorities and the courts.

Mutual agreements that amend or supplement an agreement that has been implemented in the form of a protocol or a supplementary agreement are considered part of the agreement and are given the same weight as the other part of the agreement, with binding effect for the National Tax Court and the courts.

The rules of interpretation of the Vienna Convention in Articles 31-33 are used in determining the content of the Convention in connection with the settlement of specific double taxation cases.